## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**10/14/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| **YAZOO PIPELINE CO., L.P.,** *et al*, | § | **Case No. 08-38121** |
| Debtor(s). | § | |
| | § | **Chapter 7** |
| | § | |
| **JOSEPH M HILL,** *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **Adversary No. 10-3655** |
| | § | |
| **NEW CONCEPT ENERGY, INC.,** *et al*, | § | |
| Defendant(s). | § | **Judge Isgur** |

### MEMORANDUM OPINION

The Court grants, in part, and denies, in part, the Plaintiffs' motion to amend, which seeks leave to file the Second Amended Complaint, ECF No. 96-1. The Court also reconsiders its earlier memorandum opinion on the Defendants' motions to dismiss, ECF No. 61, in light of the allegations in the Second Amended Complaint. The Court vacates the dismissal of the Plaintiffs' claims for conversion of seismic data and conversion of cash collateral, but does not vacate dismissal of any other claims.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a).

### Bankruptcy Court's Authority

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, exercise authority over essential bankruptcy matters under the "public rights exception." Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473

U.S. 568, 593 (1985).  The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."  *Central v. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'").  *But see Stern*, 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n.11 (1989) that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

Many bankruptcy proceedings likely fall outside the "public rights" exception.  The Supreme Court has held, for example, that a fraudulent conveyance suit against a party that has not filed a claim against the estate falls outside of any "public rights exception" that would allow adjudication by a bankruptcy judge without a jury.  *Granfinanciera*, 492 U.S. at 55-56.  Under *Stern*, the Court's authority over state law matters is particularly questionable.

The Plaintiffs' claims are based entirely on state law.  The Court therefore considers whether the dispute is so intertwined with essential bankruptcy matters that the filing of the bankruptcy petition transformed the character of the dispute from a typical private rights dispute to a public rights dispute.  *See Stern*, 131 S.Ct. at 2618 ("Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *cf. Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) (holding that, with respect to jury rights, a creditor's consent to a bankruptcy court's *in*

*rem* jurisdiction transforms the character of the claim from legal to equitable, but that this transformation did not affect "disputes that are only incidentally related to the bankruptcy process"). Although the claims in this proceeding involve conduct that took place within the context of a bankruptcy case, bankruptcy law does not alter the state-law character of the claims. The claims would not necessarily be resolved through the claims adjudication process or through the resolution of any other essential bankruptcy matter. This Court does not have authority to enter a final judgment in this matter. On this Court's Recommendation, the District Court has ordered that the reference will be withdrawn after all pretrial matters are concluded.

Because the Court does not at this time dispose of any claims by issuance of a final order, the Court need not decide the extent of its authority over the claims in this proceeding. *Stern* restricts a bankruptcy court's authority to enter a final order or judgment, but it does not limit this Court's authority to enter pre-trial orders in matters that are within its statutory jurisdiction.

## Background

This adversary proceeding is associated with the bankruptcy cases[1] of Yazoo Pipeline Co., LP ("Yazoo"); Sterling Exploration & Production Co., LLC ("Sterling"); and Matagorda Operating Co., LLC ("Matagorda") (collectively, "Debtors"). Sterling was an oil and gas exploration and production company. Yazoo was an oil and gas pipeline company, transporting Sterling's and other companies' oil and gas to shore. Matagorda was the general partner and manager of Sterling. The three Debtors filed voluntary chapter 11 petitions on December 23, 2008. The cases were converted to cases under chapter 7 on December 8, 2009.

---

[1] Yazoo's bankruptcy case is No. 08-38121. Matagorda's case is No. 08-38122, and Sterling's case is No. 08-38123. The three cases are jointly administered.

The adversary proceeding was filed on December 2, 2010 by Joseph M. Hill, the Debtors' chapter 7 Trustee ("Trustee"); Mining Oil, Inc. ("Mining"); and Randall O. Sorrels (collectively, "Plaintiffs"). The Plaintiffs sued New Concept Energy, Inc. ("NCE"); Coastland Operations, LLC ("Coastland"); Gulf Coast Exploitation, LLC ("Gulf Coast"); Dave Morgan; Charles Cheatham; and John Thibeaux (collectively, "Defendants").[2] The Plaintiffs have now settled with Gulf Coast and Thibeaux. To provide context, the Court will first discuss the major events in the Debtors' bankruptcy cases.

*1. The Yazoo/Sterling/Matagorda Bankruptcy Cases*

The claims in this proceeding concern conduct that allegedly occurred during the course of the Debtors' bankruptcy cases. As the Court noted in its March 24, 2011 Memorandum Opinion, the cases were, especially before the conversion to chapter 7, "marred by numerous instances of delay, disobedience, and rose-colored projections." ECF No. 61, at 2.

**a. The Debtors' Unsuccessful Dealings with NCE**

The Debtors' "rose-colored projections" primarily involved plans to sell an ownership interest in the Debtors to NCE. The sale to NCE was central to the Debtors' proposed reorganization plans. When the sale never materialized, the Debtors were unable to confirm chapter 11 plans.

From April 2009 until December 2009, the Debtors and NCE represented that a deal would soon be finalized. On April 16, 2009, Cheatham, who was at that time the Debtors' principal, testified that NCE was prepared to pay up to $7,000,000.00 to purchase an 80% ownership interest in the Debtors. Mot. to Borrow Hr'g 22:20-23:25, Apr. 16, 2009. According

---

[2] Gulf Coast and Thibeaux have settled with the Plaintiffs. On June 13, 2011, the Court approved a compromise that included, among other provisions, an agreement that an allegedly valuable lease (the N/2 ST52 lease) and three other leases would be assigned to High Island Gas, LLC, a wholly owned subsidiary of Mining. The estates have a carried interest in future income earned from the leases.

to Cheatham, this amount would have enabled the Debtors to pay their creditors in full.  *Id.* at 22:20-25.

On April 23, 2009, the Court authorized the Debtors to borrow up to $300,000.00 in debtor-in-possession ("DIP") funding from NCE.  No. 08-38121, ECF No. 143.  On June 22, 2009, the Court authorized an additional $300,000.00.  No. 08-38121, ECF No. 234.  On June 25, 2009, the Court entered an interim order authorizing another $250,000.00.  No. 08-38121, ECF No. 253.  A final order authorizing the $250,000.00 was entered on August 4, 2009.  No. 08-38121, ECF No. 333.

On April 28, 2009, the Court approved a disclosure statement providing that the Debtors' bankruptcy plan would be implemented with funds from NCE.  On June 5, 2009, Morgan—NCE's business representative—reaffirmed NCE's ability to fund the Debtors' reorganization.  However, NCE's counsel informed the Court on July 29, 2009, that NCE did not yet have the full $7,000,000.00 needed to fund the reorganization.  NCE's counsel stated that he thought NCE would be prepared to close the deal on September 15, 2009.

After months of delay, NCE never purchased the Debtors' assets.  The Debtors were unable to confirm a plan of reorganization, and the Court converted the cases to chapter 7 cases.

**b.  The Court's Show Cause Order and Order Removing Cheatham**

In June 2009, six months after the Debtors filed bankruptcy, the Debtors still had not filed schedules, statements of financial affairs, or monthly operating reports.  The Court issued an order to show cause why the Court should not order the appointment of a chapter 11 trustee.  No. 08-38121, ECF No. 196.  At a hearing on June 9, 2009, the Court discovered that Cheatham had diverted estate assets to pay pre-petition debts in his personal bankruptcy case.  No. 08-

38121, ECF No. 207.   The Court removed Cheatham from his management position with the Debtors.  *Id.*

### c.   The Debtors' Inaccurate Budgets

During the course of the bankruptcies, the Debtors filed numerous budgets that understated expenses or erroneously indicated that the Debtors would be operating at a positive cash flow.  The budgets were repeatedly inaccurate, and the Debtors operated at a substantial loss while the chapter 11 cases were pending.  The budgets formed an integral part of various orders authorizing the use of cash collateral.  When the budgets were insufficient to pay required expenses, the Debtors repeatedly and intentionally violated the cash collateral orders.  Moreover, the Debtors repeatedly and intentionally incurred post-petition debts when expenses massively exceeded budgeted amounts.

### d.   The Court's Conversion Order

The Court converted the Debtors' chapter 11 cases to chapter 7 cases on December 8, 2009.  The Court cited numerous reasons for the conversion, including failure to comply with orders to pay administrative claims and failure to file timely reports.  Additionally, the Debtors continued to lose money and repeatedly failed to meet their forecasts.  Moreover, despite repeated projections that NCE would soon be able to purchase the Debtors' assets, NCE had not performed.

### *2. Plaintiffs' Allegations*

The Plaintiffs' allegations concern misconduct that occurred before and after the conversion of the cases.  According to the Plaintiffs, one or more of the Defendants (i) diverted estate assets without Court authorization, (ii) misrepresented NCE's interest in the Debtor's assets, (iii) permitted a valuable oil and gas lease to lapse with the intent that the lease to be

purchased by another entity, (iv) misappropriated Debtors' data and cash collateral, and (v) filed inaccurate and misleading budgets and monthly operating reports.

The Court does not assume the truth of the following allegations and reports them solely for the purpose of analyzing whether the Plaintiffs have stated claims for which relief can be granted.

### a.  Morgan and Thibeaux's Control of the Debtors

The Plaintiffs allege that Morgan and Thibeaux took control of the Debtors and engaged in various forms of misconduct.  For example, according to the Plaintiffs, Morgan and Thibeaux spent over $1,400,000.00 of the Debtors' cash collateral without the Court's authorization and failed to disclose material events outside of the Debtors' ordinary course of business.

### b.  Wrongful Perpetuation of the Debtors' Chapter 11 Cases

The Plaintiffs allege that Morgan and NCE wrongfully prolonged the chapter 11 proceedings by misrepresenting NCE's intention to purchase the Debtors' assets.  According to the Plaintiffs, NCE had determined by July 2009 that it was not interested in purchasing the assets.  Morgan continued to represent that NCE wanted to purchase the Debtors' assets. Because of NCE's alleged misrepresentations, the Plaintiffs assert, the Debtors stayed in chapter 11 long after reorganization became infeasible and while substantial losses were being incurred.  Had the Debtors' cases been converted sooner, the Plaintiffs could have avoided unnecessary expenses.

### c.  Expiration and Subsequent Acquisition of the N/2 ST52 Lease

The Plaintiffs also allege that Cheatham, Morgan, and Thibeaux allowed a valuable oil and gas lease from the State of Texas, the N/2 ST52 lease, to be transferred out of the Sterling bankruptcy estate.  The Plaintiffs allege that Cheatham, Morgan, and Thibeaux engaged in a step

transaction in which they allowed the lease to expire with the intention of repurchasing it from the State of Texas.

According to the Plaintiffs, Cheatham, Morgan, and Thibeaux learned that the N/2 ST52 tract contained valuable oil and gas reserves. The tract probably contained Sterling's best reserves. Plaintiffs allege that Cheatham, Morgan, and Thibeaux knew the lease would expire on October 19, 2009, and that Cheatham knew the Debtors could avoid the expiration by asking the Texas General Land Office ("GLO") to pool the lease with its neighboring leases. The Debtors did not make the request, and the lease lapsed.

The GLO conducted an auction for the N/2 ST52 lease in March 2010. Thibeaux allegedly informed the Trustee that he was going to purchase the lease but failed to mention that the lease had been property of the Sterling estate. Gulf Coast, a company owned by Thibeaux and which then employed Cheatham, won the auction and acquired N/2 ST52 for $323,000.00. The sale price was approximately seven times greater than the purchase price of adjacent leases.

### d. Defendants' Misuse of the Estates' Data and Business Opportunities

Plaintiffs allege that Defendants misused the estates' data and business opportunities. Thibeaux and Morgan allegedly caused Sterling's proprietary seismic data to be copied from the bankruptcy estates' computers. Coastland allegedly used the seismic data to evaluate and purchase leases in Matagorda Bay. Gulf Coast allegedly used the data to evaluate and purchase the N/2 ST52 lease.

Plaintiffs also allege misuse of business opportunities. Coastland and/or NCE allegedly used Sterling's data to discover a potential opportunity to acquire certain properties owned by Main Energy, Inc. The properties, Plaintiffs assert, should have been purchased on behalf of Sterling.

### 3. Procedural History

In their original complaint, the Plaintiffs asserted causes of action (against one or more of the Defendants) for (i) undue influence or control; (ii) conversion; (iii) avoidance of pre-petition transfer; (iv) injunctive relief; and (v) breach of fiduciary duty/aiding and abetting and concert of action.

The Plaintiffs filed the First Amended Complaint on February 28, 2011.  The First Amended Complaint asserted causes of action for (i) undue influence and breach of fiduciary duty; (ii) aiding and abetting a breach of fiduciary duty; (iii) conspiracy; (iv) fraud; (v) conversion/unjust enrichment/self-dealing; (vi) respondeat superior; and (vii) avoidance of post-petition transfer.

NCE, Coastland, Morgan, Thibeaux, and Gulf Coast filed motions to dismiss the First Amended Complaint.  ECF Nos. 56, 57, 58 & 59.  The Court granted, in part, and denied, in part, the motions.  ECF No. 61.  The Court dismissed the following claims:

- Plaintiffs' claim for undue influence against Thibeaux and Morgan;

- Plaintiffs' claim for fraud against Gulf Coast and Coastland;

- Plaintiffs' claim for fraud by nondisclosure against all Defendants except Cheatham;

- Plaintiffs' claim for conversion against all Defendants except Cheatham; and

- Plaintiffs' claim for self-dealing against all Defendants except Cheatham.

ECF No. 61, at 13.

The Plaintiffs, Gulf Coast, Thibeaux, NCE, and Morgan filed motions to reconsider the Court's ruling on the motions to dismiss.  ECF Nos. 65, 67, 70 & 74.

Additionally, all defendants except Cheatham demanded a jury trial.  NCE had moved for withdrawal of the reference on January 17, 2011.  ECF No. 31.  On April 14, NCE filed a brief in

support of its motion to withdraw the reference, arguing that it had a right to a jury trial before the District Court.  Coastland also filed a brief in support of the motion.  ECF Nos. 78 & 79.

The Court held a hearing on the motions to reconsider on April 21, 2011.  The Court ordered additional briefing regarding the Bankruptcy Court's subject matter jurisdiction over certain claims and the Defendants' jury rights.

On May 2, 2011, before the Court ruled on the motions to reconsider or the motion for withdrawal of the reference, the Plaintiffs filed a motion for leave to file the Second Amended Complaint.

At a hearing on June 13, 2011, the Court approved a settlement releasing all claims against Gulf Coast and Thibeaux.  No. 08-38121, ECF No. 888.  The Plaintiffs indicated at the hearing that they wished to redraft the complaint to reflect the settlement and remove Gulf Coast and Thibeaux as parties.  The Plaintiffs therefore withdrew the motion to file the Second Amended Complaint.

In a Report and Recommendation issued on June 15, 2011, the Court recommended that the District Court withdraw the reference with respect to this proceeding.  ECF No. 92.  Because of the Bankruptcy Court's familiarity with the case, the Bankruptcy Court recommended that the District Court refer all pretrial matters to the Bankruptcy Court.  ECF No. 92, at 25.  On June 22, 2011, the District Court issued an order stating that it would try all of the claims in this proceeding, but referred all pretrial matters to the Bankruptcy Court.  ECF No. 95.  The Bankruptcy Court retains authority to adjudicate these motions for reconsideration and other pretrial motions.

After revising the Second Amended Complaint, the Plaintiffs moved to file the (updated) Second Amended Complaint on June 24, 2011.  ECF No. 96.  Upon the Plaintiffs' motion, Gulf Coast and Thibeaux were dismissed as parties on July 19, 2011.  ECF No. 103.

The Second Amended Complaint asserts claims for:

- Breach of fiduciary duty;

- Aiding and abetting breach of fiduciary duty;

- Conspiracy;

- Common-law fraud;

- Conversion/unjust enrichment; and

- Respondeat superior.

ECF No. 96-1.

On August 16, 2011, the Court held a hearing on the motion to amend.  The Court ordered additional briefing on whether the Trustee could assert the rights of defrauded creditors. The Court also announced that it would consider whether to vacate its dismissal of the conversion claims in light of the arguments made at the April 21, 2011 hearing.

The Plaintiffs filed a brief on the fraud claim and the conversion claims on August 30, 2011.  ECF No. 109.  NCE and Coastland also filed a brief on August 30, 2011.  The Plaintiffs filed a supplemental brief on September 13, 2011.

The Court now grants, in part, and denies, in part, the motion to amend, and decides the motions for reconsideration in light of the allegations in the Second Amended Complaint.

**Analysis**

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). A decision to grant leave is within the discretion of the Court,

but Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir.2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir.1999)). The Court does not have the discretion to deny leave to amend unless it has a substantial reason for doing so. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir.1996) (citations omitted). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

Here, the Plaintiffs have not unduly delayed in filing their motion to amend or repeatedly failed to cure deficiencies by previously allowed amendments.  The Defendants have not filed objections to the motion to amend other than a supplemental brief on the issues of the Trustee's standing, the conversion claims, and the claims for breach of fiduciary duty/aiding and abetting breach of fiduciary duty by usurpation of corporate opportunities.  Defendants do not assert bad faith or undue prejudice.  The Court therefore considers only whether amendment would be futile.

It is within the Court's discretion to deny a motion for leave to amend if it is futile. *Stripling*, 234 F.3d at 872–73.  To determine whether amendment would be futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). If claims are insufficiently stated, amendment would have no purpose.

In order to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain

statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. Fed. R. Civ. P. 9(b).  *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir.1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb.16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentation).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir.2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir.2002)).

### 1. Fraud

In its March 24, 2011 Memorandum Opinion, the Court found the Plaintiffs had pleaded with particularity a plausible fraud claim that Morgan and NCE misrepresented NCE's intent to purchase Debtor's assets.  The Plaintiffs later moved to file the Second Amended Complaint, ECF No. 96-1, which deletes some of the allegations with respect to the fraud claims following the dismissal of Gulf Coast and Thibeaux from this proceeding.

The Court ordered briefing on the issue of whether the Plaintiffs had pleaded reliance, an essential element of common-law fraud.  Following their motion to file the Second Amended Complaint, the Plaintiffs requested leave to amend again to plead reliance, if the Court determined that sufficient reliance had not been pleaded.  ECF No. 109, at 6.  The Court now rules that the Plaintiffs, in their Second Amended Complaint, fail to state a claim for fraud, but will allow the Plaintiffs to amend.

The Trustee has exclusive standing to bring suit on behalf of the estates.  *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 544 (5th Cir. 2009) (quoting *In re Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994)).

> If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.  If, on the other hand, the cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action.  Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. As part of this inquiry, we look at the nature of the injury for which relief is sought.

*Id.*  The Trustee cannot bring fraud claims that allege particularized injury to specific creditors; the Trustee may, however, assert generalized injuries on behalf of the Debtors' estates.  *Hill v. Oria (In re Juliet Homes, LP)*, 2010 WL 5256806, at *20 (Bankr. S.D. Tex. Dec. 16, 2010).  The Trustee may also raise claims that arise post-petition if the conduct injured the estate.  *See Giacometti v. Arton Bermuda Ltd. (In re Sia)*, 349 B.R. 640, 655 (Bankr. D. Haw. 2006).

In the proposed Second Amended Complaint, the Trustee deletes some of the allegations of reliance and injury that are asserted in the Amended Complaint, ECF No. 52, but still alleges generalized harm to the Sterling estate.  ECF No. 96-1, at 21 ("Defendants wrongfully prolonged the proceedings . . . and the administrative expenses mounted dramatically in that time. . . . The Sterling estate was insolvent when all costs were included . . . and the Sterling estate should have

been converted to a Chapter 7 much earlier. . . . Defendants left the estate burdened with $1.8 million in unpaid bills. . . . Defendants misused cash collateral to detriment of estate, Mining and Sorrels. . . . Defendants converted valuable assets of the estate, unjustly enriching Morgan and Coastland, and harming the estate.").

Some of the alleged misrepresentations took place prior to the conversion of the Debtors' bankruptcy cases to chapter 7—and thus before the appointment of the Trustee. Moreover, the misrepresentations were allegedly made by Cheatham, who was a principal of the Debtors, and Morgan, who allegedly exercised control over the Debtors. The fraud claims involving the alleged pre-conversion misrepresentations therefore may be subject to an *in pari delicto* defense. "The equitable defense of in pari delicto, which means 'in equal fault', is based on the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Howard v. Fid. & Deposit Co. of Md. (In re Royale Airlines, Inc.)*, 98 F.3d 852, 855 (5th Cir.1996). However, *in pari delicto* cannot independently defeat a trustee's standing to raise a claim. *Juliet Homes*, 2010 WL 5256806, at *22; *Hill v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 746 (Bankr. S.D. Tex. 2008), *cited with approval in Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009).

Additionally, the *in pari delicto* defense may not apply against the Trustee. The Fifth Circuit recently held that even when a debtor would be barred by judicial estoppel from asserting a claim because he failed to list the claim on his bankruptcy schedules, the trustee was not barred by judicial estoppel. *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc). Judicial estoppel is an equitable defense, and "courts may apply it flexibly to achieve substantial justice." *Id.* Fairness did not weigh toward barring the trustee's claim. *Id.* *In pari delicto* is similarly an equitable defense, and, like judicial estoppel, may not necessarily apply to claims brought by the

Trustee.  In any case, the Trustee has standing to bring claims that belonged to the estate prior to conversion, even if the *in pari delicto* defense may ultimately apply to those claims.[3]

The Defendants argue in their motion for reconsideration that the Trustee may not bring fraud claims for acts that occurred before his appointment.  ECF No. 70, at 4.  The Trustee, they argue, could not have relied on any representation made before his appointment.  The estates, however, could have relied on representations made before the Trustee's appointment.  If the estates had fraud claims at the time of the Trustee's appointment, the Trustee may assert those claims on behalf of the estates.

With respect to the fraud claims based on the alleged post-conversion misrepresentations, the Trustee may plainly assert those claims.  The Trustee allegedly relied on behalf of the estate. Additionally, the court in *Sia* held that post-appointment claims are not subject to the *in pari delicto* defense:

> The property of a chapter 7 bankruptcy estate belongs to the trustee, not to the debtor. If the trustee's conspiracy claims are based upon postpetition activities of the conspirators, it does not matter whether or not the debtor is one of the conspirators. The debtor's postpetition unclean hands do not impair the ability of the trustee in bankruptcy to pursue the debtor and debtor's co-conspirators.

349 B.R. at 655.

However, the Trustee's fraud claim (or claims), asserted on behalf of the estates, must allege each element of fraud *with respect to the estate*.  Otherwise, the Trustee fails to allege an

---

[3] The Plaintiffs also raise—and argue against—the issue of whether imputation of Cheatham's (and possibly Morgan's) knowledge to the Debtors and/or estates under agency imputation principles could defeat the reliance element.  ECF No. 112, at 2-3 (citing *Rogers v. McDorman*, 521 F.3d 381, 394 (5th Cir. 2008); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982)).  The Plaintiffs argue that the adverse interest exception, which bars imputation when an agent's actions are adverse to the interest of the corporation, applies to bar imputation here. ECF No. 112, at 3 (citing *In re Mediators, Inc.*, 105 F.3d 822, 827 (2d Cir. 1997)).  The Second Amended Complaint adequately alleges that Cheatham and Morgan acted adversely to the Debtors' interests.  Moreover, the Defendants do not argue that agency imputation principles defeat the fraud claims at the motion to dismiss stage. The Second Amended Complaint therefore does not, on its face, fail to state a claim simply because of agency imputation principles.

element of fraud.  *See Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340

B.R. 1, 32 (Bankr. E.D.N.Y. 2006) (noting that under New York law, a bankruptcy trustee's

complaint alleging fraud "must plead actual, direct reliance *by the debtor* upon the

misrepresentations or omissions allegedly made by the defendants") (emphasis added).

The elements of common-law fraud are:

> (1) that a material representation was made; (2) the representation
> was false; (3) when the representation was made, the speaker knew
> it was false or made it recklessly without any knowledge of the
> truth and as a positive assertion; (4) the speaker made the
> representation with the intent that the other party should act upon
> it; (5) the party acted in reliance on the representation; and (6) the
> party thereby suffered injury.

*In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  The Trustee cannot plead fraud

by alleging, for example, that a creditor relied on the Defendants' alleged misrepresentations.

In the Second Amended Complaint, the Trustee fails to plead fraud against the debtor or

the estate.  Although the Second Amended Complaint alleges numerous misrepresentations, it

does not specifically allege that any of these representations were made to the estate or the

Trustee.  Because the Trustee does not allege that misrepresentations were made to the estate or

the Trustee, he fails to plead (i) the Defendants' intent that the estate or Trustee should rely,

(ii) the estate or Trustee's reliance, and (iii) resulting injury to the estate.

The closest the complaint comes to alleging intent and reliance is its statement that

"Thibeaux and Morgan both knew that the Trustee would not go forward with their proposals if

he knew the truth.  Trustee's emails are unambiguous about this."  ECF No. 96-1, at 21.

Nowhere does the complaint allege that the Trustee or, pre-conversion, the estates, actually relied

on any specific misrepresentations.  Although some of the alleged misrepresentations, ECF No.

96-1, at 19-20, may have been made to the Trustee and/or estate, the complaint alleges only that

Cheatham made misrepresentations "to the Court and creditors." The Second Amended Complaint alleges that Morgan made misrepresentations without identifying to whom the representations were made. The Trustee does not identify which of these misrepresentations the estate or the Trustee allegedly relied on, how they relied, and what injury resulted from the reliance. The general allegations under each element of fraud do not causally connect to each other. The Trustee therefore fails to state a claim for fraud.

The facts pleaded in the Second Amended Complaint may support a claim for fraud on the court under Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60. *See The Med Plex, L.L.P. v. Tex. State Bank (In re Genesis Pediatric Dev. LLC)*, 2008 WL 177767, at *5 (Bankr. S.D. Tex. Jan. 18, 2008) (stating that, although nondisclosure of pertinent facts does not ordinarily support a cause of action for fraud on the court, if a defendant had affirmatively made misrepresentations to the court, such conduct may support a claim for fraud on the court). However, although the Plaintiffs allege that the Court relied on the Defendants' misrepresentations, the Plaintiffs nowhere explicitly assert a fraud on the court claim. The remedy available for a successful fraud on the court claim is the setting aside of a judgment. *See* Fed. R. Civ. P. 60(d) ("This rule does not limit a court's power to . . . (3) set aside a judgment for fraud on the court."). Plaintiffs do not seek to have any judgment set aside. ECF No. 96-1, at 23-24. The Court therefore concludes that the Second Amended Complaint does not state a claim for fraud on the court, nor does it attempt to do so.

Moreover, Mining and Sorrels do not state a claim for fraud. The fraud claims asserted in the Second Amended Complaint include allegations that "Cheatham created an artificially high asset value and misled the Court and the Trustee and Mining . . . Defendants misused cash collateral to the detriment of estate, Mining and Sorrels." ECF No. 96-1, at 21.

Although the Second Amended Complaint alleges that (i) Mining was misled by Cheatham's artificially high asset value; and (ii) Mining and Sorrels were harmed by Defendants' misuse of cash collateral, the Plaintiffs do not allege that Mining and Sorrels relied to their detriment on any particular misrepresentation.  The only injury Mining and Sorrels are alleged to have sustained was through the misuse of cash collateral, and—although this injury is mentioned in the fraud section of the Second Amended Complaint—the Plaintiffs do not allege how this injury was the result of reliance on any of Defendants' alleged misrepresentations.  The Court will allow Mining and Sorrels to amend to plead fraud.

Because none of the Plaintiffs state a claim for fraud in the Second Amended Complaint, the proposed amendments to the fraud allegations, as presently pleaded, would be futile.  The motion to amend is therefore denied as to the fraud claims, but the Court will allow the Plaintiffs to file another amendment.[4]

With respect to the motions for reconsideration, the Court does not vacate its dismissal of the fraud by nondisclosure claim with respect to all Defendants except Cheatham.  In their motion for reconsideration, the Plaintiffs seek clarification of the elements of fraud by nondisclosure that they failed to plead.

As the Court stated in its March 24, 2011 Memorandum Opinion, the elements of fraud by nondisclosure are:

> (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on

---

[4] As discussed in this opinion, the Court will allow the Plaintiffs to replead the fraud claims, the breach of fiduciary duty by usurpation of corporate opportunities claim, and the conspiracy claims.  If the Plaintiffs elect to replead, they must do so in the context of an a new motion to amend.

the defendant's nondisclosure; and (8) the plaintiff was injured as a
result of acting without that knowledge.

*7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys.*, 245 S.W.3d 488, 507 n.27 (Tex. App.—

Houston [14th Dist.] 2007, pet. denied).    The proposed Second Amended Complaint, ECF No.

96-1, eliminates the dismissed fraud by nondisclosure claim.  The Amended Complaint, which

includes the fraud by nondisclosure claim, simply incorporates the damages sections for the

common-law fraud claim.  ECF No. 52, at 29.  The section alleges general injuries, but it fails to

identify how the Plaintiffs relied on any particular nondisclosure.  The Plaintiffs therefore fail to

state a claim for fraud by nondisclosure.  The Court does not vacate its dismissal of the fraud by

nondisclosure claim.

The Defendants correctly argue in their motion for reconsideration that each separate

fraud claim must satisfy Fed. R. Civ. P. 9(b).  *United States ex rel. Grubbs v. Kanneganti*, 565

F.3d 180, 192 (5th Cir. 2009); *see Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th

Cir. 2008) ("[Rule 9(b) requires a pleader of fraud to detail with particularity the time, place, and

manner of each act of fraud, plus the role of each defendant in each scheme.").  The Court denies

as moot the motion for reconsideration with respect to the Amended Complaint, ECF No. 52.  As

discussed above, the Court finds that in the Second Amended Complaint, no Plaintiff states a

claim for fraud.  The Court will allow the Plaintiffs to replead fraud, and any amended complaint

must plead each fraud claim with particularity.

*2. Conversion*

The Plaintiffs have moved for reconsideration of the Court's dismissal of their conversion

claims.  In its March 24, 2011 Memorandum Opinion, the Court stated:

To prove conversion, a claimant must establish: "(1) it owned or
had legal possession of the property or entitlement to possession,
(2) the defendant unlawfully and without authorization assumed

and exercised dominion and control over the property to the exclusion of, or inconsistent with, the claimant's rights, (3) the claimant demanded return of the property, and (4) the defendant refused to return the property."

ECF No. 61, at 34 (quoting *Hunt v. Baldwin*, 68 S.W.3d 117, 131 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Plaintiffs correctly argue that demand is not a necessary element of conversion. Demand and refusal are necessary elements of conversion only in situations where the party initially acquired the property lawfully, such as a bailee, "where a conversion by the bailee cannot otherwise be shown than by his refusal to comply with the demand for possession." *Presley v. Cooper*, 284 S.W.2d 138, 141 (Tex. 1955). The Court therefore erred in dismissing the Plaintiffs' conversion claims solely on the basis of their failure to plead demand and refusal.

Although the claims should not be dismissed for failure to plead demand and refusal, Plaintiffs fail to state a claim for conversion of business opportunities. However, Plaintiffs state claims for conversion of seismic data and cash collateral.

The Second Amended Complaint alleges that "Thibeaux and Morgan caused the copying of Sterling's proprietary seismic data from computers owned by the bankruptcy estate." ECF No. 96-1, at 7-8. As NCE and Coastland argue, under Texas law, there is no claim for conversion of intangible property. "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Int., Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.). "[C]ourts have held that conversion law does not apply to forms of intangible property which do not generally merge with a document." *Quantlab Techs. Ltd. (BVI) v. Godlvesky*, 719 F. Supp. 2d 766, 778 (S.D. Tex. 2010). At least some types of intellectual property are intangible property. *Id.*

Plaintiffs argue, however, that under *United States v. Tex. Instruments*, 551 F.2d 599 (5th Cir. 1977), the seismic data was tangible. ECF No. 112, at 9. The Fifth Circuit held in *Texas Instruments* that, for taxation purposes, seismic data constitutes tangible property when "the value of the seismic data is entirely dependent upon [the] existence of the tapes and film." 551 F.2d at 611. In that case, the court held that "the seismic information [did] not exist as property separate from the physical manifestation." *Id.*

*Texas Instruments* deals with data reduced to tape or film, not to data copied from a computer. However, seismic data stored on a computer is also tangible property. When seismic data is stored on a computer in a form that is viewable on a computer screen, the computer data is not different in any relevant respect from the tapes and film in *Texas Instruments*. In both cases, the data has a physical manifestation—the storage medium.

The Court concludes that property is tangible when it (i) could not exist apart from some physical storage medium, such as a computer, flash drive, tapes, or film; and (ii) can be accessed by a human user in a manner analogous to the access of traditional tangible property. A digital map, for example, cannot exist unless it is stored on some physical medium, and it can be viewed on a computer screen in the same way a traditional paper map can be viewed. The purpose of the map is substantially unchanged. The progression of technology changes the storage and access of the underlying property, but should not change whether unauthorized control over that property is subject to a conversion claim. As the New York Court of Appeals noted in *Thyroff v. Nationwide Mut. Ins. Co.*, "electronic records that were stored on a computer [are] indistinguishable from printed documents [and are] subject to a claim of conversion[.]" 864 N.E.2d 1272, 1278 (N.Y. 2007). "It would be a curious jurisprudence that turned on the existence of a paper document rather than an electronic one. Torching a company's file room

would then be conversion while hacking into its mainframe and deleting its data would not." *Id.* (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1034 (9th Cir. 2003)).

In *Devon Energy Corp. v. Westacott*, the Southern District of Texas discussed *Thyroff*, but did not explicitly decide whether Texas law permits a claim for conversion of electronic data. 2011 WL 1157334, at *8-*9 (S.D. Tex. Mar. 24, 2011).  In *Devon Energy*, the plaintiff asserted a conversion claim for the alleged deletion of "data from . . . work on the Barnett Shale analysis." 2011 WL 1157334, at *2.  The court cited *Quantlabs* and denied summary judgment where the plaintiff "did not acknowledge [*Quantlabs*] and [had] not shown that deleting computer files may be the basis for a conversion claim under Texas law."  *Id.* at *9.

Here, instead of considering a motion for summary judgment, the Court considers whether the Plaintiffs have stated a claim for conversion.  The Court concludes that *Quantlabs* does not control this case and that the Plaintiffs have stated a claim.

*Quantlabs* is inapposite.  *Quantlabs* dealt with software implementing models and algorithms that were intended to forecast the prices of assets. Unlike the seismic data, the models and algorithms could not be accessed by a human user in a manner analogous to the access of traditional tangible property.  *Quantlabs*, 719 F. Supp. 2d at 770.  The computer code implemented a *process*—a process that could not be reduced to or represented in a tangible form. The electronic seismic data, on the other hand, was simply more efficiently stored information that could have been represented through other, indisputably tangible, media.  *See Tex. Instruments*, 551 F.2d at 611 ("The seismic data tapes and films are tangible personal property[.]").

The Plaintiffs' allegation that Morgan caused the "copying" of the data is sufficient. "Texas conversion law does not require exclusive control of property.  Rather, it recognizes

conversion where the defendant exercises dominion and control of the property 'to the exclusion of *or inconsistent with* the owner's rights.'"  *Quantlabs*, 719 F. Supp. 2d at 780 (quoting *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)).  The Plaintiffs allege that Morgan controlled the seismic data in a manner inconsistent with the estate's rights.

The Plaintiffs state a claim for conversion of the seismic data.  The Court therefore vacates its dismissal of the claim for conversion of the seismic data and grants the Plaintiffs' motion to amend with respect to the conversion of seismic data claim.

The Court does not, however, vacate its dismissal of the claim for conversion of business opportunities.  In contrast to the seismic data, an opportunity to purchase leases exists apart from any physical manifestation.  The Plaintiffs therefore do not state a claim for conversion of the opportunity to purchase the Matagorda Bay leases.  Even the leases themselves are not alleged to be tangible property.  The Plaintiffs have not alleged that the Matagorda Bay leases were merged into a document.  ECF No. 110, at 5.

Moreover, the Plaintiffs do not allege that the leases were converted, but that the opportunity to purchase the leases was converted.  The Plaintiffs allege that "Morgan, Coastland and others converted the estate's seismic data and used it in furtherance of their plan. Specifically, Coastland used estate property to evaluate and purchase leases in Matagorda Bay." ECF No. 96-1, at 8.  The opportunity to purchase the leases was intangible, and Plaintiffs do not state a claim for conversion of business opportunities with respect to the leases.

The other allegations of conversion of business opportunities also do not state a claim. Plaintiffs allege:

> One such business opportunity that Morgan, Thibeaux, Cheatham and Coastland converted from the Sterling estate was the transaction or transactions involving the acquisition by Coastland or New Concept of the Main Energy, Inc. properties.  These

> properties were acquired between May and November of 2009, at a
> time when it was contemplated that Morgan, Thibeaux and
> Cheatham would be owners of Coastland, but in fact the Main
> Energy transaction was a corporate opportunity of the Sterling
> estate.

ECF No. 96-1, at 8. The opportunity to acquire the Main Energy, Inc. properties was not tangible property. The Plaintiffs do not allege that the "corporate opportunity" was in any way merged into a tangible document, and they do not state a claim for conversion of corporate opportunities. The Court does not vacate its dismissal of the claim for conversion of business opportunities.

The Court vacates its dismissal of the claim for conversion of cash collateral with respect to Morgan. In order to state a claim for conversion, Plaintiffs had to plead (1) that the Debtors owned or had legal possession of the cash collateral, and (2) the defendant—here, Morgan—unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, and inconsistent with, the claimant's rights.

The elements of demand and refusal are not applicable here. These elements are required only when one party initially acquired the property lawfully and conversion cannot otherwise be shown other than through refusal to comply with a demand. *Presley*, 284 S.W.2d at 141. Plaintiffs allege that Morgan and Cheatham misused cash collateral. To the extent Morgan and Cheatham's use of cash collateral violated cash collateral orders or security agreements, they did not "lawfully" use the cash collateral. Even if Morgan or Cheatham rightfully exercised control over the cash collateral, they were not authorized to violate orders or security agreements. It would therefore be possible to show conversion other than through refusal to comply with a demand. Where a defendant violates an order or security agreement to take control of property,

that violation demonstrates conversion in the same way that demand and refusal demonstrate conversion.

The Plaintiffs plead that the cash collateral belonged to the estates.  At paragraph 18 of the Second Amended Complaint, they plead, "During their tenure, Morgan and Thibeaux were responsible for over $900,000.00 in unauthorized cash collateral expenditures from the Sterling estate, and approximately $500,000.00 in unauthorized cash collateral expenditures from the Yazoo estate."  ECF No. 96-1, at 5.  A paragraph 33, the Plaintiffs allege that "Morgan, Thibeaux and Cheatham . . . . took money."  ECF No. 96-1, at 8.

Finally, the Plaintiffs allege that the Defendants "converted property and were unjustly enriched in the following ways: . . . . Cash collateral was wrongfully used or taken by Morgan and Cheatham."  ECF No. 96-1, at 22.

The Plaintiffs state claims for conversion of seismic data and cash collateral.  The Court vacates its dismissal of these claims and grants the Plaintiffs' motion to amend with respect to these claims.  The Court does not vacate its dismissal of the conversion of business opportunities claim and denies leave to amend with respect to that claim.

### 3.  Breach of Fiduciary Duty/Aiding and Abetting Breach of Fiduciary Duty

The Plaintiffs also allege that the Plaintiffs' actions in usurping corporate opportunities constituted a breach of fiduciary duty and/or aiding and abetting a breach of fiduciary duty.

The usurpation of corporate opportunities doctrine does not apply to all corporate fiduciaries.  Only officers, directors, and major shareholders who are fiduciaries can be liable for usurpation of corporate opportunities.  *United Teachers Assocs. Ins. Co. v. MacKeen & Bailey Inc.*, 99 F.3d 645, 651 (5th Cir. 1996).

Plaintiffs allege that Cheatham (who did not file a motion to dismiss) was an officer or director of the Debtors.  With respect to Morgan, however, Plaintiffs allege only that Cheatham "ceded operating control of the Debtors to Morgan."  ECF No. 96-1, at 4.  They do not allege that Morgan actually held a position with the Debtors.  *See DSC Commc'ns v. Next Level Commc'ns*, 107 F.3d 322 (5th Cir. 1997) ("As a matter of law in this circuit, Eames, Keeler and Next Level could not be held responsible for diverting a corporate opportunity from DSC because they did not hold any of these positions.").  The Plaintiffs also do not allege that Morgan was a de facto officer of the Debtors.

There is no case law dealing with the issue of whether a de facto officer may be sued for usurpation of corporate opportunities.  The Court concludes that the Plaintiffs may state a claim for usurpation of corporate opportunities against Morgan only if they allege facts—independent of his alleged misconduct—that show he was a de facto officer or director or one or more of the Debtors.

Plaintiffs fail to state a claim against any Defendant but Cheatham for breach of fiduciary duty by usurpation of corporate opportunities.  The Court grants leave to amend as to the Plaintiffs' other breach of fiduciary duty claims and will allow the Plaintiffs to replead to allege that Morgan was a de facto officer of one or more of the Debtors.

Additionally, the Plaintiffs state a claim against Morgan for aiding and abetting Cheatham's breach of fiduciary duty by usurpation of corporate opportunities.  Although the Plaintiffs do not plead facts showing that Morgan had a fiduciary duty not to usurp corporate opportunities, they plead facts showing that Cheatham had and violated such a duty and that Morgan knowingly participated in the violation.  ECF No. 96-1, at 13-14.  When a third party knowingly participates in a breach of duty of a fiduciary, such third party becomes a joint

tortfeasor with the fiduciary and is liable as such.  *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.).  The Plaintiffs also state a claim for aiding and abetting various other alleged violations of fiduciary duty, including misuse of cash collateral, misuse of Hunt's gas, secret payments to Cheatham, and prolonging the proceedings.  ECF No. 96-1, at 13-14.  The Court therefore grants leave to amend as to the aiding and abetting breach of fiduciary duty claim.

### 4. Conspiracy

Because the Plaintiffs fail to state the underlying claims, the Court also denies leave to amend as to the claims for conspiracy to commit common-law fraud and conversion of business opportunities.  The Plaintiffs fail to plead that the underlying objectives were unlawful under Texas law, and therefore they fail to plead an essential element of conspiracy with respect to those claims.  The Court will allow the Plaintiffs to amend to replead the conspiracy claims.  The Court grants leave to amend as to all other conspiracy claims.

### 5. Deleted Claims

Plaintiffs also request that they be allowed to replead Mining Oil's claims.  ECF No. 109, at 6.  Mining Oil previously deleted its claims (from the Second Amended Complaint) because those claims fell outside the Bankruptcy Court's authority.  However, the Bankruptcy Court recommended that the reference be withdrawn in this adversary proceeding because all Defendants but Cheatham asserted jury rights.  ECF No. 92.  Upon the Bankruptcy Court's Recommendation, the District Court issued an order stating that it would withdrew the reference in this proceeding before trial, but referring pre-trial matters to the Bankruptcy Court.  ECF No. 95. Although Mining Oil's claims did not fall within the District Court's bankruptcy jurisdiction

under 28 U.S.C. § 1334(a), and thus could not be referred to the Bankruptcy Court's authority, the claims may fall within the District Court's supplemental jurisdiction under 28 U.S.C. § 1367. The Plaintiffs may amend to reassert the deleted claims.

## Conclusion

The Court vacates the dismissal of the claims for conversion of seismic data and cash collateral..  The Court does not vacate the dismissal of any other claims.

Because the Second Amended Complaint does not state a claim for fraud, the Court denies leave to amend with respect to the fraud claims, but will allow the Plaintiffs to replead.

Because the Second Amend Complaint does not state a claim for breach of fiduciary duty by usurpation of corporate opportunities against any Defendant but Cheatham, the Court denies leave to amend with respect to the other Defendants, but will allow the Plaintiffs to replead to allege that Morgan was a de facto officer of one or more of the Debtors.

Because the Second Amended Complaint does not state a claim for conspiracy to commit conversion of business opportunities or fraud, the Court denies leave to amend with respect to those conspiracy claims, but will allow the Plaintiffs to replead.

The Plaintiffs' motion to amend to file the Second Amended Complaint is granted as to all other claims.  The Plaintiffs also may reassert Mining Oil's claims.  Upon repleading claims and reasserting the deleted claims, Plaintiffs shall file another motion to amend.

SIGNED **October 14, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE